**STATE of Maine**

v.

**Michael CARNEVALE.**

Supreme Judicial Court of Maine.

Argued Sept. 19, 1991.
Decided Oct. 31, 1991.

Michael Cantara, Dist. Atty., David Gregory, (orally), Alfred, for the State.

Thomas VanHouten, (orally), Sanford, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

Defendant Michael Carnevale appeals the judgment of conviction of operating under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B (Supp.1990), entered by the Superior Court (York County, *Brodrick, J.*) on his conditional guilty plea. The sole issue on defendant's appeal is whether the District Court (York, *Janelle, J.*) erred in denying his motion to suppress the evidence obtained when a police officer stopped his vehicle. Finding no error, we affirm defendant's conviction.

In the early morning of March 11, 1990, State Police Officer Theodore Short was on routine patrol driving north along Route 236 near the Kittery–Eliot line. At that point the road has two lanes divided by double yellow lines. At the District Court hearing on defendant's suppression motion, Officer Short described his observations, as follows:

As I neared the [Eliot] town line, I observed a vehicle traveling southbound toward the Town of Kittery. The vehicle ... appeared to be coming over into my lane of travel. I couldn't tell, because of the darkness in that area and the oncoming headlights, whether or not it actually ... crossed over the center line. But it was very apparent to me that it was coming toward me. And then as we passed each other going in opposite directions, the vehicle had returned back to its original path of travel. At that point, I turned around and began to follow the vehicle and observe further operation.

....

While I was behind the vehicle ... the vehicle would travel over onto the yellow line, putting both tires onto the yellow line, and stay there for a distance of about 100 feet or so. And then the vehicle would travel back off ... away from the yellow line about three feet and then come back over onto the yellow line again. This occurred twice in that two-lane section [and once again within a mile].... It was a slow weave onto the line and back off. The other thing I made note of was that the speed was constantly fluctuating between 35 and 40 miles an hour, and this is a 45 mile-an-hour zone. I followed the vehicle for a total distance of about a mile and a half, and at that point, I turned on the blue lights ... and the vehicle stopped....

In response to the question whether he ever saw the car's wheels cross the center line, Officer Short replied: "The wheels never crossed. No. But [t]hey covered the line." He also testified that the normal lane of traffic in that stretch of highway was about three feet to the right of the center line.

**748**

In *State v. Chapman*, 495 A.2d 314, 317 (Me.1985), we held that a *Terry* investigatory stop [1] is valid as a recognized exception to the warrant requirement of the Fourth Amendment only on the satisfaction of both of two conditions: (1) the officer must in fact have had an articulable suspicion of criminal conduct,[2] and (2) the officer's suspicion must be objectively reasonable in the totality of the circumstances. In the case at bar the motion court made no express findings on those requirements. But since under our cases both of those findings of fact are necessary to the court's ultimate decision to uphold the *Terry* stop, we will take the court to have implicitly made both of the underlying determinations. *See State v. Moulton*, 481 A.2d 155, 163 (Me.1984). We review those findings of fact only for clear error. *See State v. Cyr*, 501 A.2d 1303, 1305 (Me. 1985); M.R.Crim.P. 52(a). We find no clear error in either implicit finding.

## I.

### *The Officer's Subjective Suspicion of Criminal Conduct*

The record here on review fully supports the court's finding that when Officer Short stopped defendant's car he in fact harbored a suspicion that defendant was driving while under the influence. Contrary to defendant's contention, Officer Short's failure to testify specifically as to what he suspected did not prevent the court from rationally inferring from all the evidence that he in fact had suspected defendant to be engaged in criminal activity. *See State v. Chapman*, 495 A.2d at 317. The officer's subjective suspicion of ongoing criminal activity may be established either by the direct testimony of the officer or by circumstantial evidence, in the same

way as any other factual question is resolved in a court of law. As Professor LaFave has written specifically of *Terry* stops, "a reasonably specific statement by an officer of the circumstances underlying his action—when considered together with how he in fact reacted to the situation which confronted him afford an adequate basis for judicial review." 3 W. LaFave, *Search and Seizure* § 9.3(a), at 428 (2d ed. 1987).

Our decision in *State v. Garland*, 482 A.2d 139 (Me.1984), constitutes no authority to the contrary. In that case we held four suspicions that the officer articulated on the stand to be objectively unreasonable, and in those circumstances we refused to consider a fifth suspicion advanced by the State for the first time at oral argument. *Id.* at 145–46.

## II.

### *Objective Reasonableness of the Officer's Suspicion*

We can find no clear error in the District Court's finding that Officer Short's suspicion was objectively reasonable. The court correctly distinguished the case at bar from *State v. Caron*, 534 A.2d 978 (Me.1987). In *Caron* we held an officer's suspicion of operation under the influence not to be objectively reasonable because he had observed Caron's car straddling the center line only once and for only a short distance. The present facts are much closer to those in *State v. Pelletier*, 541 A.2d 1296 (1988). There we upheld a finding of reasonableness of the officer's suspicion of intoxication on the basis of his seeing the defendant's car crossing over the center line three times and drifting onto the shoulder once. That the present defendant did not actually cross the center line is irrele-

1. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. The author of the leading treatise on the law of search and seizure believes that our *Chapman* decision, in requiring a showing of a subjective suspicion, wrongly applies *Terry* and its Supreme Court progeny interpreting the United States Constitution. *See* 3 W. LaFave, *Search and Seizure* § 9.3(a), at 425 n. 19 (2d ed. 1987). Professor LaFave states: "[The *Terry*] test, as is

the case with the legal standard for arrest, is *purely* objective and thus there is no requirement that an actual suspicion by the officer be shown." *Id.* at 425 (emphasis in original). LaFave cites for the opposing view only our *Chapman* decision and a California case that interpreted the California Constitution, *People v. Aldridge*, 35 Cal.3d 473, 198 Cal.Rptr. 538, 674 P.2d 240 (1984).

vant; we did not in *Caron* and *Pelletier,* nor do we now, announce any mechanical standard by which to review a court's finding of reasonableness. We defer to the factfinder's determination unless it is clearly erroneous in all of the circumstances. The court's determination in the case at bar survives that deferential test.

The entry is:

Judgment affirmed.

All concurring.