## STATE of Maine

v.

## Andrea M. CUSACK.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 6, 1994.
Decided Oct. 27, 1994.

Michael Cantara, Dist. Atty., David Gregory, Office of Dist. Atty., Alfred, for the State.

Sonnie Wendell, Biddeford, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

■ Defendant Andrea Cusack appeals from an order of the Superior Court (York County, *Brodrick, J.*) affirming her conviction in the District Court (Biddeford, *Janelle, J.*) for operating a motor vehicle while under the influence of intoxicating liquor in violation of 29 M.R.S.A. § 1312–B (Pamph.1993). Following the District Court's denial of her motion to suppress, defendant entered a conditional plea of guilty. The sole issue on appeal is whether the District Court erred in finding that the arresting officer's decision to make an investigatory stop of defendant's vehicle was objectively reasonable. Finding no error, we affirm.

The facts presented at the suppression hearing are essentially undisputed. While on patrol duty on the Maine Turnpike just prior to 3:00 a.m. on June 14, 1992, an officer of the Maine State Police observed and followed defendant's vehicle which was traveling at a steady speed of 50 m.p.h. The posted speed limit was 65 m.p.h. with a minimum speed of 45 m.p.h. The officer testified that in the course of slightly more than one mile, he observed the vehicle twice drift to the right and drive onto the fog line for a short distance, drive onto the fog line once for about one hundred feet, and cross over the fog line by about one foot and straddle the line for one hundred yards. He then stopped the vehicle and ultimately placed defendant under arrest.

Defendant testified and offered the explanation that she was driving below the posted speed limit because it was not her vehicle and she cannot see well at night. She stated that she moved to the right to try to encourage the vehicle following her to pass. She testified that she felt nervous and uncomfortable because of an incident involving a young lady that had happened on the turnpike, and because of stories she had heard about people pulling drivers over and impersonating police officers.

The District Court denied the motion to suppress and found that the officer was reasonably concerned that defendant was either operating under the influence, ill, or falling asleep. The Superior Court denied defen-

dant's appeal, and defendant filed a timely appeal to this Court.

Defendant argues that evidence gained as a result of the stop of her vehicle should have been suppressed because the officer's suspicions were not objectively reasonable. She contends that her overall operation of the vehicle does not rise to the level of unusual or erratic driving that justifies a stop under recent Maine case law.

■ The Fourth Amendment to the United States Constitution and article 1, section 5 of the Maine Constitution protect individuals from unreasonable intrusions by police officers and other governmental agents. *State v. Nelson,* 638 A.2d 720, 722 (Me.1994). An officer is justified in making an investigatory stop if the officer, at the time of the stop, has "an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop is objectively reasonable in the totality of the circumstances." *Id.* at 722 (quoting *State v. Dulac,* 600 A.2d 1121, 1122 (Me.1992)). The Court must find, therefore, "that the officer actually entertained a concern and that the concern was reasonable under the circumstances." *State v. Burnham,* 610 A.2d 733, 734 (Me.1992).

■ We review directly the District Court's decision. *State v. Dean,* 645 A.2d 634, 635 (Me.1994); *State v. Worster,* 611 A.2d 979, 980 n. 2 (Me.1992). "The nature of the detaining officer's subjective suspicion and the nature of the observations upon which that suspicion is based are questions of fact." *State v. Fillion,* 474 A.2d 187, 190 (Me.1984). Whether an officer's suspicion is objectively reasonable is a question of law. *Nelson,* 638 A.2d at 722; *Fillion,* 474 A.2d at 190. Although the ultimate question of legal

justification for the stop in this case is a mixed question of fact and law, *see Nelson,* 638 A.2d at 722; *Fillion,* 474 A.2d at 190, we generally review for clear error. *See, e.g., Nelson,* 638 A.2d at 722.

■ Defendant, however, urges this Court to apply instead an independent standard of review because she does not challenge the District Court's findings of fact but rather contends that the District Court reached an erroneous legal conclusion as to the constitutional sufficiency of the factual basis to stop. "[W]hen a legal conclusion based on uncontroverted facts is challenged, the judge's ruling is independently reviewable on appeal." *State v. Enggass,* 571 A.2d 823, 824–25 (Me. 1990) (applying a standard of independent review to trial court's ruling that there was insufficient evidence for probable cause to arrest).[1] The key question on this appeal is whether the District Court properly applied legal principles to the undisputed facts in finding the officer's suspicions to be objectively reasonable. We will independently review, therefore, the District Court's findings.

We find no error in the court's finding that the officer's suspicion was objectively reasonable. There is no mechanical standard by which we review a court's finding of reasonableness. *State v. Carnevale,* 598 A.2d 746, 749 (Me.1991). We find here that the officer had more than speculation or an unsubstantiated hunch that the driver was operating a motor vehicle under the influence. Based upon the combined circumstances of defendant's speed, repeated drifting, and the early morning hour, the District Court did not err in finding that the officer was justified in stopping the defendant. Although the circumstances of this case may not rise to the level of erratic driving found in several of our recent cases, *State v. Pelletier,*[2] 541 A.2d 1296, 1297 (Me.1988), *Carnevale,*[3] 598 A.2d

---

1. *See also State v. Hill,* 606 A.2d 793, 795 (Me. 1992); *State v. Cloutier,* 544 A.2d 1277, 1280 (Me.1988); *State v. Hasenbank,* 425 A.2d 1330, 1332 (Me.1981) (in each of these cases, we independently reviewed a trial court's suppression order).

2. In *Pelletier,* we upheld a District Court's denial of a defendant's motion to suppress on facts showing that the police officer observed the de-

fendant cross over the center line three times and drift onto the shoulder once. 541 A.2d at 1297.

3. In *Carnevale,* we upheld a District Court's denial of a defendant's motion to suppress. 598 A.2d 746. The police officer had observed the driver make a slow weave onto the center line three times while fluctuating his speed between 35 and 40 m.p.h. in a 45 m.p.h. zone. *Id.* at 747.

746, and *State v. Burnham*,[4] 610 A.2d 733 (Me.1992), the combined facts, including the repeated acts of drifting, are sufficient to support the conclusion that the officer's suspicion was objectively reasonable. *Compare with State v. Caron*, 534 A.2d 978, 979 (Me. 1989) ("A vehicle's brief, one time straddling of the center line of an undivided highway is a common occurrence and, in the absence of oncoming or passing traffic, without erratic operation or other unusual circumstances, does not justify an intrusive stop by a police officer.").

Defendant argues that her pulling over to encourage the vehicle behind her to pass was not unusual given the late hour, the fact that she was traveling on the turnpike, and given her concerns that night for her personal safety. She also argues that her 50 m.p.h. speed was steady and that the lack of fluctuation distinguishes this case from other recent Maine cases like *Carnevale*, 598 A.2d at 747–49, and *Burnham*, 610 A.2d at 734–35. Although defendant may have had legitimate concerns that prompted her to drive at 50 m.p.h. and to pull over to the right, we agree with the District Court that "[w]hat the motorist was concerned about and what the motorist was thinking was something that the officer could not know at the time he was following that vehicle." Rather, the key is what the officer observed, and whether it was reasonable in the totality of the circumstances known to him to conclude that a stop was justified. *See Nelson*, 638 A.2d at 722. We find that the officer was reasonably warranted in making the stop.

The entry is:

Judgment affirmed.

All concurring.

---

4. In *Burnham*, a police officer stopped a vehicle after observing it weave back and forth about six times between the breakdown lane and the center line, although it did not cross either line. 610 A.2d at 734. The driver was travelling between 35 and 40 mph in a zone with a posted speed limit of 50 mph. *Id.* In upholding the District Court's denial of the defendant's motion to suppress, we considered the lateness of the hour (12:45 a.m.), the unexplained weaving of the vehicle, and its speed. *Id.* at 735.