1997 ME 39

**STATE of Maine**

v.

**Randy EASTMAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 5, 1996.
Decided March 12, 1997.

Michael P. Cantara, District Attorney (David D. Gregory, of counsel), Jeffrey Moskowitz, Asst. Dist. Atty., Alfred, for State.

Michael J. Waxman, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ.

WATHEN, Chief Justice.

[¶ 1] Defendant, Randy Eastman, appeals the judgment entered in the Superior Court (York County, *Crowley, J.*) convicting him of operating under the influence of intoxicants in violation of 29–A M.R.S.A. § 2411 (1996). Defendant argues on appeal that the District Court (Biddeford, *MacNichol, J.*) erred in denying his motion to suppress certain evidence ultimately admitted against him at trial and makes several other constitutional arguments not presented to the trial court. Finding no error, we affirm the judgment.

[¶ 2] The facts as developed at trial may be summarized as follows. On September 8, 1995, at approximately one o'clock in the morning, Officer Charles Snow of the Saco Police Department was parked near a sports bar. He heard "several loud popping sounds like fire crackers going off" and saw defendant driving his car out of a parking space that had smoke rising from it. A group of people were pointing at defendant's car. The officer pursued defendant for a short distance and he pulled over.

[¶ 3] On approaching defendant's driver-side window, the officer noticed a strong odor of alcohol coming from inside the vehicle. In response to questioning, defendant told the officer that he had consumed three beers that evening. At that point, the officer asked defendant to get out of his car to perform field sobriety tests. After defendant got out of the vehicle, the officer again smelled alcohol, saw that defendant had bloodshot eyes, and noted that his speech was slurred. The officer testified that he then administered the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand test, a finger dexterity test, an alphabet test, and a counting test. He testified that defendant had difficulty in performing these sobriety tests.

He then arrested defendant and transported him to the Saco police station where a breath test indicated that his blood alcohol level was .13.

[¶ 4] Defendant was charged with operating under the influence and he entered a plea of not guilty. Defendant then moved to suppress certain statements he made after the officer stopped him. A hearing on this motion was held in the District Court (Biddeford, *MacNichol, J.*).[1] The hearing, unlike the written motion, focused on the legality of the field sobriety test results. Defendant challenged the results at the hearing on the ground that they were: (1) the fruit of an unreasonable seizure; and (2) evidence that he was improperly compelled to furnish against himself in violation of Article I, section 6 of the Maine Constitution. The District Court rejected both of these arguments and denied the motion to suppress.

[¶ 5] The case was transferred to the Superior Court for trial. The jury found defendant guilty. He was convicted and sentenced to nine days in county jail, his license and right to register a motor vehicle were suspended for eighteen months, and he was ordered to pay a $750 fine plus surcharges and fees. Defendant now appeals

## I. Fourth Amendment

[¶ 6] The Fourth Amendment of the U.S. Constitution protects persons against unreasonable searches and seizures. In order to comply with these provisions, a field sobriety test, like any investigatory stop, must be based on " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *State v. Dulac*, 600 A.2d 1121, 1122 (Me.1992) (quoting *Terry v.*

---

1. Although there has been no objection by the State to its use, we note that the "transcript" of the District Court hearing presented to us on appeal was produced from duplicate tapes made available to defendant's counsel and was not ordered and transmitted to this court as required by the relevant rule. *See* M.R.Crim.P. 27(c) and M.R.Civ.P. 76H. Administrative Order Regarding Electronic Recording in the Superior and District Courts (Effective March 15, 1995) states that counsel may obtain duplicate tapes of any proceeding electronically recorded but that no "record or transcription made from a duplicate tape, nor any part thereof, shall be incorporated in or substituted for any portion of a transcript included in an official record without the consent of all parties to the proceeding and with the approval of the presiding justice or judge." In order to ensure the integrity of the appellate process, we will, in the future, reject substitute transcripts that do not affirmatively reflect the consent of all parties and the approval of the presiding judge.

*Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). "A police officer may make an investigatory stop if at the time of the stop the officer has an articulable suspicion, objectively reasonable in light of all the circumstances, that the object of the search has committed or is about to commit a crime." *State v. Wood,* 662 A.2d 919, 920 (Me.1995). For the stop to be reasonable, the court must find "that the officer actually entertained a concern and that the concern was reasonable under the circumstances." *State v. Cusack,* 649 A.2d 16, 18 (Me.1994) (quoting *State v. Burnham,* 610 A.2d 733, 734 (Me.1992)).

[¶ 7] The officer testified at the suppression hearing that he asked defendant to perform the tests because an odor of alcohol was coming from his car and because defendant admitted that he had been drinking. Defense counsel cross-examined the officer and asked whether he had "any suspicion" that he would find evidence of "intoxication" by asking defendant to perform the tests and the officer answered "No." On the basis of this answer, defendant argued to the District Court and now argues on appeal that the officer did not subjectively have the requisite articulable suspicion to constitutionally administer the sobriety tests. The District Court found that, although the officer had no preconceived notion of how the tests "were going to work out," the defense counsel misconstrued his testimony. The court concluded that he had good reasons for administering the tests that were legally sufficient for Fourth Amendment purposes.

[¶ 8] For purposes of determining the standard of review, we have held that "[t]he nature of the detaining officer's subjective suspicion and the nature of the observations upon which that suspicion is based are questions of fact. *State v. Fillion,* 474 A.2d 187, 190 (Me.1984). Whether an officer's suspicion is objectively reasonable is a question of law." *Cusack,* 649 A.2d at 18. "The ultimate question of justification—i.e. whether a reasonable suspicion exists in the mind of the officer—combines these elements. We will reverse the trial court's ultimate conclusion, containing as it does determinations of fact and law, only if no competent evidence exists to support it." *State v. Fillion,* 474 A.2d 187, 190 (Me.1984).

[¶ 9] The District Court found that the officer entertained a suspicion that defendant was driving while under the influence of intoxicants. *See Wood,* 662 A.2d at 920–921 (reasonable basis for suspicion of being under the influence can exist independently of any evidence of actual impairment). In addition, the court found that the officer had good reason to ask the defendant to take the tests. Given the officer's testimony as to his state of mind, the smell of alcohol coming from defendant's car, defendant's admission to having had three beers, and the fact that the officer suspected defendant of igniting fireworks dangerously near others, the court did not clearly err in concluding that the officer had a reasonable suspicion.

## II. Maine Privilege Against Self-incrimination

[¶ 10] The Maine Constitution provides:

> In all criminal prosecutions, the accused ... shall not be compelled to furnish or give evidence against himself or herself. . . .

Me. Const. art. I, § 6. Defendant contends that this language should be broadly interpreted to prohibit the State from compelling criminal defendants to submit to field sobriety tests because they are being "compelled to furnish or give evidence" against themselves. Field sobriety test results are generally considered to be physical or non-testimonial evidence. *Pennsylvania v. Muniz,* 496 U.S. 582, 602–603 n. 16, 110 S.Ct. 2638, 2651, n. 16, 110 L.Ed.2d 528 (1990). It is undisputed that the federal privilege against self-incrimination [2] only prohibits the compulsion of evidence of a testimonial or communicative nature. *See e.g. Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–1831, 16 L.Ed.2d 908 (1966). Nevertheless, defendant argues that we should treat field sobriety test results in the same manner as incul-

---

2. The U.S. Constitution provides: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V.

---

**183**

patory statements. To do this would require us to abandon the distinction between testimonial and non-testimonial evidence in the context of interpreting the Maine privilege and ignore or overrule our historical stance on this subject.[3] We decline to do so.

[¶ 11] The federal and state privileges against self-incrimination serve the same end. As noted by the United States Supreme Court, "the constitutional guarantees, however differently worded, should have as far as possible the same interpretation." *Counselman v. Hitchcock*, 142 U.S. 547, 584–585, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892); *see also Schmerber*, 384 U.S. at 761 n. 6, 86 S.Ct. at 1831 n. 5 (denying that the testimonial/non-testimonial distinction rests on the use of the word "witness" in the fifth amendment).

[¶ 12] We have consistently interpreted the Maine privilege co-extensively with the federal privilege.[4] "These two constitutional provisions are so similar in nature and identical in purpose that precedent with respect to the construction of the one may well serve as precedent for the construction of the other." *Gendron v. Burnham*, 146 Me. 387, 395, 82 A.2d 773, 780 (1951). Furthermore, in *State v. Nason*, we held that the Maine Constitution is not violated when a defendant is compelled to produce physical, non-testimonial evidence. *State v. Nason*, 433 A.2d 424, 428 (Me.1981). The introduction of the field sobriety tests performed at the request of the officer violated neither the state nor the federal privilege against self-incrimination.

### III. Alleged Constitutional Violations During Trial

[¶ 13] Defendant challenges several evidentiary rulings made during trial on constitutional grounds. At the trial, the court refused to allow defendant to impeach the officer by using a hearsay document. The court also refused to permit defendant to ask the officer about the margin of error of the intoxilyzer machine in the absence of some foundation that he was qualified to testify about that subject. Finally, the court precluded any inquiry into the voluntariness of nystagmus because it was irrelevant given that the State was not relying on the horizontal gaze nystagmus test result to prove impairment. Defendant contends that the combined effect of these evidentiary rulings deprived him of a meaningful opportunity to cross-examine the officer in violation of his right to confront adverse witnesses and his right to a fair trial. In addition, defendant argues that his right to a fair trial was violated by certain remarks made by the prosecutor during closing argument.[5]

[¶ 14] Even constitutional errors must be preserved for appellate review. *State v. Jones*, 580 A.2d 161, 163 (Me.1990). At no time before the trial court did defendant assert his rights under the Confrontation Clauses of either the federal or state constitutions. None of what happened below "can fairly be said to have raised for the presiding Justice's consideration the issue of the constitutional right of confrontation now being asserted on appeal." *State v. Christianson*, 404 A.2d 999, 1005 n. 1 (Me.1979). Similarly, defendant, after an initial objection to the State's remark in question and a correction by the State, requested no further

---

3. Defendant does not argue that any of the field sobriety tests are testimonial.

4. The procedures developed to protect defendants pursuant to the Maine privilege, however, differ somewhat from those employed by federal courts. *See State v. Snow*, 513 A.2d 274, 276 (Me.1986) (citing *State v. Collins*, 297 A.2d 620, 627 (Me.1972) (when an accused claims his statements are involuntary, then the State must establish voluntariness by proof beyond a reasonable doubt).

5. During its closing, the State made the following remark to the jury.

The number of field sobriety tests. Well wouldn't you folks rather see a police officer be thorough in the field and do six field sobriety tests, which Officer Snow testified was his routine every time he does an OUI case, wouldn't you rather see an officer to (sic) use tests involving balance, test involving memory? At this point, defendant objected on the ground that the State was playing on the jurors' fears. The court noted "there's a way to discuss taking six tests without placing the jury in a position as to what they would like to see for the future." The prosecutor rephrased his argument and defendant requested no further relief.

relief from the trial court. A defendant who fails to move for a mistrial due to an improper closing remark or to request other relief "is taken to have acquiesced in the corrective measures adopted by the trial justice." *State v. Rose,* 622 A.2d 78, 79 (Me.1993) (citation omitted). Because of defendant's failure to raise his constitutional objections to the trial court's evidentiary rulings and to the State's closing at trial, we will only review those rulings and that remark for obvious error. *Christianson,* 404 A.2d at 1005; *State v. Jacques,* 537 A.2d 587, 589 (Me.1988). Defendant has failed to demonstrate the obviousness of any error committed or that any injustice done was so great that we "cannot in good conscience let the conviction stand." *State v. Boyle,* 560 A.2d 556, 557–558 (Me. 1989) (quoting *State v. True,* 438 A.2d 460, 469 (Me.1981)).

IV. Sentencing [6]

 [¶ 15] Defendant argues that the sentencing court impermissibly punished him for exercising his right to a jury trial. This contention is unsupported by the record, and therefore without merit. In this case, the court expressly stated that it was not punishing defendant for going to trial but noted that by doing so, defendant risked "that factors or facts are developed to a greater extent that may somehow effect the sentencing that might not have been brought out at a plea." It considered defendant's trial for the limited purpose of determining his "failure to take responsibility." In doing so, the court committed no error.

The entry is:

Judgment affirmed.

---

**6.** We only review the legality of a sentence on direct appeal, not its propriety, and any infirmity must appear affirmatively from the record. *State v. Farnham,* 479 A.2d 887, 889 (Me.1984).