STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

DEC 14 2001

RECEIVED AND FILED
Susan Guillette, Clerk

STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-21
DHM - KNO - 12|14|2001

LILA J. MAGIE,

       Petitioner

    v.

STATE OF MAINE,

       Respondent

**DECISION AND ORDER**

This matter is before the court on petitioner's M.R. Civ. P. 80C appeal of the suspension of her operator's license by the Secretary of State. More specifically, Lila Magie appeals from the DMV Hearing Examiner's finding that (1) she operated a motor vehicle with a 0.08% blood alcohol content (BAC) and (2) probable cause existed to believe that she operated or attempted to operate a motor vehicle with a 0.08% BAC.

On August 6, 2000, in the evening, a Camden Police Department officer observed the petitioner's vehicle proceeding at 71 m.p.h in a posted 50 m.p.h. zone on Route 52. The officer pulled in behind the petitioner's vehicle and activated his blue lights but no siren. Petitioner pulled into the breakdown lane and slowed but did not stop; instead, she pulled back into the travel lane. After approximately one-quarter of a mile, the officer used his siren and petitioner's vehicle stopped. She was issued a summons for speeding.

The officer noted the smell of intoxicants on the petitioner's breath and upon

1

inquiring as to the start of her trip, the petitioner told him that she had come from having dinner at a local restaurant where she had split a bottle a wine with a friend. As a result of field sobriety tests, including non-physical tests involving counting backwards and providing information with respect to the model year of her car, she was taken to the police department for an Intoxilyzer test. Her BAC result was 0.08%. As a result, the Secretary of State suspended the petitioner's license for 90 days. The suspension has been stayed pending the outcome of this 80C review.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). In reviewing the decisions of an administrative agency, the court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence which supports the result reached by the agency. *CWCO, Inc v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261. *See also Clarke v. Maine Unemployment Ins. Comm'n*, 491 A.2d 549, 552 (Me. 1985) (stating that the "reviewing court must examine the entire record to determine whether on the basis of all the testimony and exhibits before the agency it could

fairly and reasonably find the facts as it did").

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

Magie argues that the results of the field sobriety tests were exacerbated by her age (71) and her physical impairments (missing toe, osteoporosis) and the fact that she was wearing loose sandals at the time. She also explains that the margin of error associated with the Intoxilyzer test (±0.02%) means the Hearing Examiner had insufficient evidence to find that her BAC was 0.08% or more. She also alleges the Hearing Examiner committed an error of law by relying on the standard in *State v. Webster*, 2000 ME 115, 754 A.2d 976, for criminal probable cause. She argues that the correct standard here is "administrative probable cause," which she contends carries a higher threshold and the examiner's reliance on an erroneous standard denied her adequate due process.

The court notes from the hearing transcripts that the petitioner walks or runs daily and is very independent. The officer's testimony reveals that the petitioner performed reasonably well in the physical portion of the field sobriety tests. Her problems appear to relate more to difficulty in following directions closely rather

3

than in actual performance of the required maneuvers. However, field tests alone do not form the basis of probable cause. *Webster*, 2000 ME 115, ¶ 9, 754 A.2d at 978. The officer observed erratic driving behavior, smelled alcohol on her breath and, by her own admission, Magie had consumed alcohol earlier that evening. The officer needed only a "reasonable suspicion to support probable cause" independent of any evidence of impaired driving. *Id.* (citing *State v. Eastman*, 1997 ME 39, ¶ 9, 691 A.2d 179, 182; *State v. Wood*, 662 A.2d 919, 920 (Me. 1995)).

The petitioner attacks the Hearing Examiner's findings on two bases. First, she argues that *Webster* is not applicable in this case and that it was error for the Hearing Examiner to rely on *Webster* because the standard in an administrative hearing is not to determine whether there was probable cause for the officer to administer the Intoxilyzer test based upon his finding of probable cause that the driver was impaired but a standard to be used by the administrator that there must be probable cause to administer the Intoxilyzer test based upon a blood alcohol content at 0.08% or more. Petitioner relies upon the definition found in 29-A M.R.S.A. § 2453 as follows:

> Section 2453 suspension on administrative determination; excessive blood alcohol level.
> (2) Definition. For purposes of this section "operating a motor vehicle with an excessive blood alcohol level" means operating a motor vehicle with a blood alcohol level of 0.08% or more.

Petitioner argues that an operator may be found guilty of driving while under the influence under alternative theories, i.e., being impaired or having a blood alcohol content in excess of allowable limit. However, the administrative

4

suspension must be predicated upon a test resulting from probable cause only as to the blood alcohol limit.

Clearly, the petitioner is correct in her analysis of the distinction and the responsibility of the Hearing Examiner to follow the administrative definition of excessive blood alcohol level. However, the Hearing Examiner, like the officer, must rely upon circumstantial evidence in order to determine whether to submit the operator to such a test and the Hearing Examiner must look to the same circumstantial evidence to meet his requirement. There is no direct way to determine that blood alcohol level absent evidence as to the actual amount of alcohol consumed, the time at which the alcohol is consumed, the size and weight of the operator, and expert opinion as to a blood alcohol level based upon the foregoing circumstances. Otherwise, the position by the petitioner would suggest that the Hearing Examiner cannot find probable cause on an officer's observations and circumstances alone.

It is not conceivable to this court that the Legislature intended such a result. While it is true that a person can be convicted of driving under the influence by circumstantial evidence showing impairment in the absence of a blood alcohol test, it is still the responsibility of the Hearing Examiner to determine whether there is sufficient circumstantial evidence to find probable cause for imposition of the tests based upon probable cause of a blood alcohol level of 0.08%. Therefore, it still comes down to findings of fact by the Hearing Examiner based upon the circumstantial evidence presented to him. If a hearing examiner determines that it is more likely

5

than not, i.e., a preponderance, that a person displaying impairment under the circumstances existent in this case has a blood alcohol level of 0.08% or more, the probable cause standard is met. To conclude otherwise would render the statute an absurdity.

Petitioner also argues that the Hearing Examiner had insufficient evidence to support his decision due to the margin of error associated with the Intoxilyzer testing equipment as raised in these facts. The officer testified that he understood the margin of error of the Intoxilyzer test to be 0.02%.[1] Even though there was no expert testimony at the hearing, the petitioner, accepting the officer's testimony as to margin of error, would suggest that this test could have run any where from 0.06 to 0.10%. In *Mancini v. Secretary of State*, 540 A.2d 117 (Me. 1988), the Law Court found substantial evidence to support a hearing examiner's decision upholding suspension even though a chemist testified that it was equally likely that a driver's BAC was .09% or .11% when the test results indicated a BAC of .10%. While the respondent in its brief failed to address this specific issue, the record contains the printout of the alcohol analysis and it indicates the two "subject test" entries as .087% BAC and .085% BAC. Based on these test results and the Law Court's apparent dismissal of margin of error probabilities, the record contains sufficient evidence to support the hearing examiner's decision.

---

[1] While this court's observation of that testimony is not determinative of the issues in this matter, it is this court's understanding that the officer's testimony was in error, that the margin of error associated with the Intoxilyzer test is 0.002% rather than 0.02%. Otherwise, this court would reject as erroneous a discrepancy of 0.02% in multiple tests and would not allow a reading, such as in this case, of 0.06 or 0.010% as within the margin of error.

Finally, to the extent that petitioner challenges the Hearing Examiner's reliance upon *Webster*, 754 A.2d 976, that probable cause for administering a blood alcohol test for the criminal charge of operating under the influence is more expansive than probable cause for finding that the operator was operating the motor vehicle with a blood alcohol level of 0.08% or more, she is technically correct. However, in examining the entire record, the court is satisfied that even applying the level of probable cause to determine operation with excessive blood alcohol level, as defined, it is met from the findings of fact by this Hearing Examiner. The court also notes *Powell v. Secretary of State*, 614 A.2d 1303 (Me. 1992) where the Court discusses the probable cause standard to be used by a hearing examiner in the suspension process saying that determination applies only to whether the operator had excessive alcohol in his blood and thus whether the officer had sufficient reason to justify administration of the blood alcohol test. That case suggested that it is essentially the same process of determination of probable cause to justify the imposition of the Intoxilyzer test in the administrative license suspension process. The entry will be:

> Decision of the Secretary of State, Bureau of Motor Vehicles in the matter of Lila J. Magie, is AFFIRMED.

Dated: December___/4___, 2001

Donald H. Marden
Justice, Superior Court

7

Date Filed __12/8/00__  _____Knox_____  Docket No. __AP-00-021__
                                County

Action __80C__

                LILA J. MAGIE            vs.     STATE OF MAINE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Eric B. Morse, Esq.<br>PO Box 248<br>Rockland ME 04841<br>594-8400 | ~~Joseph Wannemacher, Esq.~~  Kerry O'Brien, Esq<br>Assistant Attorney General<br>6 State House Station<br>Augusta ME 04333-0006<br>626-8800 |

| Date of Entry | |
|---|---|
| 12/11/00 | On 12/8/00, The following filed by Attorney Morse:<br>-Petition for Judicial Review of Final Agency Action and Request for Stay; and Proposed Order;<br>-Copy of letter filed by Attorney Morse to Susan Cookson;<br>-Affidavit of Lila Magie; and<br>-Copy of Decision in the matter of Lila Magie. |
| 12/18/00 | On 12/15/00, Letter filed by AAG Wannemacher informing the Court to direct any correspondence to his attention. |
| 12/19/00 | Order filed:<br>Petitioner's request for Stay is hereby Granted.<br>Dated: 12/19/00<br>Marsano, J.<br>Copy in hand to Attorney Morse, copy mailed to AAG Wannemacher and attested copy to Department of Motor Vehicles. |