STATE OF MAINE                    UNIFIED CRIMINAL DOCKET

Cumberland, ss.

STATE OF MAINE

v.                                    Docket No. CUMCD-CR-17-0866

WILLIAM E. HANNA, JR.

                Defendant

### ORDER ON MOTION TO SUPPRESS

Hearing on Defendant's Motion to Suppress was held September 14, 2017. The sole witness was Officer Caleb Gray of the South Portland Police Department, who made the stop that resulted in the Class D Operating Under the Influence charge that Defendant faces in this case. A recording of the South Portland dispatch call during which a dispatcher relayed the information that formed the basis for the stop was played, on the record. Officer Gray testified credibly and clearly and the Court accepts his testimony in all respects.

By agreement of counsel, the sole issue presented is whether Officer Gray had a reasonable, articulable suspicion for his stop of the Defendant's vehicle. Based on Officer Gray's testimony and the dispatch recording, the court made findings of fact orally on the record that are incorporated into this Order.

1

Officer Gray, a South Portland police officer, was on duty, in uniform, operating a marked police cruiser while working the 2 to 11 p.m. shift on February 13, 2017. The usual wintry weather prevailed, and it either was snowing that night or it had recently snowed. The stop of Defendant's vehicle was based on information Officer Gray received from the South Portland police dispatcher while Officer Gray was on routine patrol of the city.

An unknown person had called the 911 emergency line in South Portland and made a report about a vehicle. The 911 call itself is not in evidence. A recording of the 911 call started to be played in court at the State's request but the State withdrew the request a few seconds into the recording.[1] However, the gist of the information conveyed in the call can reasonably be inferred from the information conveyed by the dispatcher to Officer Gray.

The dispatcher advised Officer Gray that a "possible OUI vehicle" being driven by a male who had been seen to "stumble on Commercial Street" in Portland was heading across the Casco Bay Bridge into South Portland. The dispatcher provided the officer with the make, model, color and license plate

---

[1] In the court's view, the content of the 911 call could have been relevant, even though the dispatcher may not have conveyed to the officer all of the information given by the caller. *See State v. Gervais*, 394 A.2d 1183, 1189 (Me. 1978) (collective knowledge of the police justified vehicle stop). *Cf. State v. Smith*, 277 A.2d 481, 488 (Me. 1971) (existence of probable cause to arrest to be evaluated from collective knowledge of police rather than personal knowledge of arresting officer).

2

number for the vehicle. Officer Gray spotted the vehicle that had been identified to him traveling into South Portland and stopped it on Ocean Street, South Portland. Officer Gray did not see any signs of erratic operation or indicia of impairment before making the traffic stop.

Accordingly, the basis for the stop was the information relayed by the dispatcher to the officer, based on what the caller had told the dispatcher. Once the officer had initiated the stop, the dispatcher informed him that the anonymous caller, who was still on the line, had followed the vehicle across the bridge and had witnessed the stop. The dispatcher told Officer Gray that the caller had confirmed that the vehicle that the caller had identified was the vehicle that the officer had stopped.

As the Law Court has observed, "In order to support a brief investigatory stop of a motor vehicle . . . a police officer must have an articulable suspicion that criminal conduct or a civil violation has occurred, is occurring, or is about to occur, and the officer's suspicion must be 'objectively reasonable in the totality of the circumstances.'" *State v. Brown*, 1997 ME 90, ¶ 5, 694 A.2d 453, *quoting State v. Cusack*, 649 A.2d 16, 18 (Me. 1994).

When the information relied on for the stop comes from an anonymous tip, as in this case, the reliability of the tip becomes a key factor. *See State v. LaFond*, 2002 ME 122, ¶ ¶ 8-9, 802 A.2d 425. The veracity of the informant who furnishes the tip is often entirely unknown, so the reliability of the tip has to be measured in large part by the extent to which the tip is predictive of the

3

officer's own observations.  *See id.* at ¶ 12 ("We . . . sanction reliance on an anonymous tip when there is subsequent corroboration.")

In *State v. Littlefield,* for example, the police received a tip that a truck of a particular color, make, model year and registration number was being operated erratically on a public road.  677 A.2d 1055, 1056.  The officer who investigated found the truck, as described, on the road predicted.  *Id.* Although the officer did not observe erratic driving, he saw the vehicle turn into a driveway at an address other than that to which it was registered.  *Id.* Based on the subsequent corroboration of the anonymous tip and the officer's observation, the Law Court upheld the stop as valid.  *Id.* at 1058.

Here, the precise information conveyed by the anonymous caller is not in evidence, but the information conveyed to the investigating officer by the dispatcher is—a suspected "OUI vehicle" of a specified color, make, model and registration being driven by a man whom the caller had seen stumbling was crossing the Casco Bay Bridge from Portland into South Portland.  The investigating officer was able to confirm independently of his own observation that a vehicle matching the description was traveling as predicted.  Although, as in *Littlefield,* the officer did not observe erratic observation, there was substantial corroboration of the anonymous tip.

As the Defendant elicited during cross-examination of the officer, it had been snowing and there was snow and ice on the ground at the time.  Thus, although the caller appears to have attributed the observed stumble to

4

impairment due to intoxication, it is possible that the stumble was due to slippery conditions. However, the officer was in no position to evaluate the accuracy of the caller's interpretation of the stumble, and an articulable suspicion does not have to be correct in order to be reasonable.

Another element of the case deserves mention as well. The anonymous caller in this case followed the so-called "OUI vehicle" across the bridge from Portland. In *State v. McDonald,* a case in which an anonymous male provided a tip about another driver's erratic operation to the officer in a face-to-face conversation, the Law Court held that the fact that the officer met with the anonymous tipster and could well have obtained his name was a factor enhancing the reliability of the tip. 2010 102, ¶ 8, 6 A.3d 283. Here, although there was no face-to-face encounter, the fact that the caller stayed on the telephone call with the dispatcher while following the so-called "OUI vehicle" into South Portland is a factor that enhances the reliability of the caller's information.

Based on the foregoing findings and conclusions, the court finds and concludes that the State has met its burden of persuasion for purposes of the motion to suppress. The officer's stop of the Defendant's vehicle was supported by the officer's actual suspicion of impaired operation and the anonymous tip was sufficiently reliable, with the subsequent corroboration through the officer's own observations, to render the suspicion reasonable.

Accordingly, Defendant's Motion to Suppress is hereby denied.

5

Dated 18 September 2017

A. M. Horton, Justice, Superior Court