NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 74

No. 2017-209

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Randy Hughs | May Term, 2018 |

William D. Cohen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **SKOGLUND, J.** Defendant Randy Hughs appeals his sentence to serve two and one half to five years for his conviction of sexual assault of a minor. He contends that the trial court erred by: (1) considering his decision to exercise his right to a trial in determining his sentence; (2) disregarding evidence that treatment in the community would be appropriate; and (3) failing to consider defendant's youth as a mitigating factor. We affirm.

¶ 2. On August 25, 2016, eighteen-year-old defendant had sexual intercourse with a fourteen-year-old minor, C.H., with whom he had been texting for the previous month and a half. The next day, defendant arranged to have a friend bring a "morning after" pill to C.H. When C.H.'s mother learned of the incident, she brought C.H. to the police station to file a complaint.

At trial on November 4, 2016, a jury found defendant guilty of sexual assault of a minor under 13 V.S.A. § 3252(c).

¶ 3.    At the sentencing hearing, a clinical psychologist testified for defendant. He noted that defendant scored a moderate-high rating under the actuarial risk-assessment measures taken by the Department of Corrections. The testifying psychologist observed that these actuarial tools have an approximately seventy-two to seventy-five percent success rate in predicting recidivism, which is significantly better than predictions made by clinicians alone. He further noted, however, that young individuals almost always score at least a moderate-low rating under this assessment scheme because it measures factors that are unlikely to be present for younger individuals, such as whether they have lived with a lover for at least two years, adding to their risk score.

¶ 4.    The testifying psychologist discussed the importance of analyzing various "dynamic changeable factors," such as "protective factors" and "risk factors," to improve an actuarial study's predictive power for a particular individual. The testifying psychologist noted that a psycho-sexual evaluation conducted by another psychologist had found four such "protective factors" that decreased the defendant's risk level, including appropriate sexual interests and the absence of physical or mental barriers to treatment. However, the testifying psychologist could not say that defendant had no barriers to successful community treatment and noted that the evaluating psychologist had also found some risk factors during the assessment of defendant. Among these factors was "poor [sexual] risk management," though the testifying psychologist observed that the sexual risk management measure is significantly affected simply because defendant is not yet in treatment. He also acknowledged, as a second risk factor, that defendant had initially gone "through a period of not doing well under community supervision," with the qualification that defendant subsequently had been very cooperative during his time as an inmate.

¶ 5.    The testifying psychologist also discussed several other considerations, including defendant's culpability-minimizing comments made during the prior assessment with the evaluating psychologist.  Though defendant's mindset was "an issue," the testifying psychologist described it as "a pretty easy one in treatment."  He also found defendant's initial denials to be "a treatment issue" that was likely resolvable.  However, the testifying psychologist stated that he "wouldn't minimize" the fact that defendant had gone through four sessions with a professional to work on impulse-control and boundary issues as a thirteen-year-old only to make a bad decision five years later.

¶ 6.    The testifying psychologist expressed concern that incarcerating a young defendant with older, more predatory, sex offenders could make defendant worse over the course of his incarceration.  He agreed with the presentence investigation (PSI) that defendant would be "appropriate for community-based treatment" and "seems to be amenable to treatment."  He discussed resources and safeguards available for treatment in the community.  The testifying psychologist agreed that defendant would have access to a similar treatment program while incarcerated.

¶ 7.    After the testifying psychologist's testimony, a victim's advocate read a statement prepared by C.H. describing the mental, physical, and emotional effects she had suffered because of the incident, such as bad grades at school, panic attacks, feeling unsafe at home, alienation from her parents and peers, and rumors at school.

¶ 8.    After the conclusion of the testimony, the trial court sentenced defendant to serve two and one half to five years and outlined its reasoning from the bench.  The court noted that "punishment is an essential component of this case for the purposes of the effect that it had, that it was easily avoidable, that it was unnecessary, it was impulsive . . . [defendant] was well aware of the fact of her age, and he had just previously turned eighteen."

3

¶ 9.    The court considered the "need to accommodate the Department [of Corrections] in risk-reduction programming that's through the Department's programming regarding his risk assessments as outlined by [the testifying psychologist] and included in the reports." In addition to providing deterrence to the general public, the court noted that the sentence "gives appropriate deterrence" to defendant specifically, before observing that "[t]here's a rehabilitative program" developed by the Department of Corrections to help defendant "self-manage appropriately to avoid having to face charges such as this in the future." The court stated that:

> Some cases require more punishment than others, but for the purposes of this case, you can't minimize the effect that this case has had on [C.H.'s] family and going forward with the case, pursuing it, testifying and—which she did not mention in her statement, she never mentioned the effects that it had on her personally.

¶ 10.    On appeal, defendant argues that the sentencing court punished defendant for exercising his right to trial, ignored the recommendation of the testifying psychologist, and failed to consider important mitigating factors when fashioning a sentence.

¶ 11.    Our review of sentencing matters is limited, and "[a]bsent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory limits and was not based on improper or inaccurate information." State v. Lumumba, 2014 VT 85, ¶ 22, 197 Vt. 315, 104 A.3d 627 (quotation omitted).

¶ 12.    Defendant first argues that the sentencing judge's remarks demonstrate that the court impermissibly punished defendant for exercising his right to take his case to trial. Defendant is guaranteed the constitutional right to a trial, and "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." United States v. Goodwin, 457 U.S. 368, 372 (1982) (quotation omitted); see also United States v. Hutchings, 757 F.2d 11, 14 (2d Cir. 1985) ("The augmentation of sentence based on a defendant's decision to stand on his right to put the Government to its proof rather than plead

guilty is clearly improper." (quotations omitted)). This principle is so fundamental to our legal system, that even the "perception—if not the actuality" of its abrogation should be avoided to prevent lasting damage to "the public's perception of the inherent fairness of the criminal justice system." State v. Elson, 91 A.3d 862, 898 (Conn. 2014).

¶ 13. Despite the well-established nature of this principle, this Court has not yet expressly adopted an analysis for determining when a court's sentencing remarks indicate an unconstitutional infringement upon a criminal defendant's right to a trial. This Court has, however, previously upheld a sentence by looking to the remarks surrounding the contested language, thereby rejecting a rule that would per se invalidate a sentence based on comments containing any words implicating the right to a trial. State v. Percy, 158 Vt. 410, 421, 612 A.2d 1119, 1126-1127 (1992). In Percy, the sentencing court had stated that:

> [The victim] and her family have experienced trauma, and that trauma . . . continues to this date. It's been a full decade, during which [they] have had to live day-to-day with this situation. The delay, of course, is not your fault. You exercised the rights which are available to you, no one in any way wishes to deny you those.

Id. at 421, 612 A.2d at 1126. The sentencing court later noted that "the victim does continue to suffer the effects of the defendant's crimes to this day. . . . This ongoing anguish is separate from any distress resulting from the defendant's exercise of his appellate rights." Id. Relying on a holistic reading of the record, this Court held that the sentencing "court's remarks dispel any hint of [vindictive sentencing]" that might have otherwise rendered the sentence invalid under a more inflexible per se approach. Id.

¶ 14. We now make explicit what was implicitly held in Percy and review the totality of the record when searching for the presence of vindictive sentencing. This approach mirrors that taken by a majority of federal and state jurisdictions that have examined the issue. See United States v. Tracy, 12 F.3d 1186, 1202 (2d Cir. 1993); Frank v. Blackburn, 646 F.2d 873, 884-85 (5th Cir. 1980); United States v. Thompson, 476 F.2d 1196, 1201 (7th Cir. 1973); United States

5

v. Medina-Cervantes, 690 F.2d 715, 716-17 (9th Cir. 1982); State v. Kelly, 770 A.2d 908, 947 (Conn. 2001); Santana v. State, 677 So. 2d 1339, 1340 (Fla. Dist. Ct. App. 1996); State v. Brown, 951 P.2d 1288, 1299 (Idaho Ct. App. 1998); State v. Eastman, 1997 ME 39, ¶ 15, 691 A.2d 179, 184; Mitchell v. State, 971 P.2d 813, 820-21 (Nev. 1998) (overruled on other grounds by Sharma v. State, 56 P.3d 868, 872 (2002)); State v. Bonilla, 985 P.2d 168, 172 (N.M. Ct. App. 1999); State v. Fitzgibbon, 836 P.2d 154, 157 (Or. Ct. App. 1992); State v. Tiernan, 645 A.2d 482, 487-88 (R.I. 1994). We do not join the minority of jurisdictions in using a per se approach to invalidate sentences associated with remarks implicating the right to trial. See Hess v. United States, 496 F.2d 936, 938 (8th Cir. 1974); Johnson v. State, 336 A.2d 113, 117-18 (Md. 1975).

¶ 15.   Here, the sentencing court considered "the effect that this case has had on [C.H.'s] family and going forward with the case, pursuing it, testifying" and went on to say that "punishment is an essential component of this case for the purposes of the effect that it had, that it was easily avoidable, that it was unnecessary, it was impulsive and . . . he was well aware of the fact of her age . . . ." These comments are ambiguous at best, raising the question of whether the sentencing court's reference to the effects of "going forward with the case" was describing defendant's choice to go to trial or C.H.'s family's decision to report the incident, contributing to the overall effect the actual crime had on C.H. and her family throughout the non-trial-related legal proceedings. Because the sentencing court's comments specifically referred to "testifying," we find it unlikely that the sentencing court was discussing actions of defendant, who did not testify at trial. The court's statement that "it was easily avoidable" could be read as referencing defendant's exercise of his trial rights or his decision to commit the crime. However, comments made about an "impulsive" decision made while "well aware of the fact of her age" more likely imply defendant's commitment of the crime than subsequent legal decisions. In context of the totality of the sentencing remarks, these comments can be more fairly read to reflect the

6

consequences of legal decisions made on behalf of C.H. and defendant's acts at the time of the incident than an exercise of his constitutional rights.

¶ 16.   While conducting a similar inquiry, the Connecticut Supreme Court recently refined its review of the totality of the sentencing record using a three-part test.   This test operates by: (1) comparing the length of the sentence given with the statutory maximum and that which was recommended by the prosecution; (2) asking whether the "vast majority" of the trial court's sentencing remarks focused on legitimate sentencing considerations; and (3) considering the context of the challenged comment.  Elson, 91 A.3d at 883-84.

¶ 17.   Applying that analysis here, the sentence to serve two and one half to five years imposed on defendant was significantly less than the statutory maximum of twenty years, or the four to sixteen years recommended by the State.   "The trial court's decision to sentence the defendant to a term of imprisonment shorter than both the maximum sentence and what the state had recommended indicates that the trial court did not intend to penalize the defendant for exercising his right to a trial."  Id. at 884.

¶ 18.   Additionally, the vast majority of the sentencing remarks concerned legitimate considerations, such as risk-reduction, deterrence, and the effect of the crime on C.H. during her high school years.   Only the word "testifying" unambiguously implicates a trial; while the legitimacy of the remaining comments reassures us that the offending word resulted from a merely rhetorical, rather than substantive, oversight.

¶ 19.   Finally, the context of the aberrant comment further assuages any lingering doubts as to the sentencing court's intentions.  The sentencing court was describing the effect that the offense had on C.H. and her family, including "the circumstances of living in a small town where the—this event was, I suspect, well known."  The sentencing court responded to the argument that defendant had already spent his eighteenth year incarcerated by noting "the effect that this has had on [C.H.] over her fourteenth, fifteenth, and sixteenth year . . . the high school years."  In

7

context, the court's comments indicate only a larger consideration of the effect of the crime in general on C.H., rather than that of defendant's choice to go to trial in particular.

¶ 20.   Just as the U.S. Supreme Court admonishes that "there are no perfect trials," neither may we expect that all sentencing hearings be completely free from rhetorical blemishes. Brown v. United States, 411 U.S. 223, 232 (1973).  Here, because the imposed sentence was significantly less than the maximum allowed by statute or recommended by the state—and because only a single word, in the context of describing the effect of the crime on the victim generally, of the three-page transcript of remarks implicated a trial—we hold that the sentencing court did not impermissibly punish defendant for exercising his right to take his case to trial.

¶ 21.   Next, defendant argues that the sentencing court impermissibly disregarded the opinion of the testifying psychologist and findings of the PSI, both of which stated that defendant would be "appropriate for community-based treatment."  There is no evidence, however, that the court relied on improper or incorrect information in fashioning its sentence.

¶ 22.   The testifying psychologist discussed rehabilitation only and was equivocal when outlining defendant's prospects for success in either a prison or a community setting.  While describing defendant as "appropriate" for treatment in the community, he noted the existence of similar treatment programs in the prison setting.  He discussed potential hurdles to success for defendant in both settings, such as defendant's previous "period of not doing well under community supervision" and the potential for regression while incarcerated with older, more predatory, sex offenders.  The testifying psychologist did not make an explicit recommendation between the two options.

¶ 23.   The sentencing court could have reached its decision by a myriad of acceptable means.  The trial court might have agreed with the testifying psychologist that defendant was "appropriate" for treatment in the community, but found defendant to be even more appropriate for treatment while incarcerated.  The court might also have simply disagreed with the testifying

8

psychologist's analysis. Finally, the court might have found that, though a viable community-based option existed for rehabilitative purposes, punitive and deterrent considerations mandated incarceration. All are permissible uses of the sentencing court's discretion.

¶ 24. The mere fact that a viable community-based treatment option exists does not render an alternative sentence, based on legitimate sentencing goals, invalid. Here, the sentencing court, in addition to weighing rehabilitative options discussed by the testifying psychologist, expressly considered the need to punish defendant for the suffering caused to C.H., as well as to deter defendant and others from similar violations in the future. The sentencing court considered a variety of legitimate goals, of which the rehabilitative objectives discussed by the testifying psychologist was only one. The sentencing court did not abuse its discretion in opting for a sentence to serve.

¶ 25. Finally, defendant argues that the sentencing court failed to consider mitigating factors while fashioning his sentence. The court is required to "consider the nature and circumstances of the crime, the history and character of the defendant, the need for treatment, and the risk to self, others, and the community at large presented by the defendant." 13 V.S.A. § 7030(a). "[T]he court [has] an obligation under Vermont's individualized sentencing process to examine defendant's case and to consider the consequences of his particular situation in fashioning a sentence." Lumumba, 2014 VT 85, ¶ 27. However, "a trial court's failure to discuss each mitigating factor in its sentencing opinion does not give rise to an automatic inference that the factors absent from the opinion were not considered." State v. Obermiller, 2016-Ohio-1594, ¶ 125, 63 N.E.3d 93; see also United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007) ("[W]e cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining [the defendant's] sentence."); People v. Oberreuter, 251 Cal. Rptr. 522, 524 (Ct. App. 1988) (presuming, "[a]bsent an explicit statement by the trial court to the contrary," "the court properly

9

exercised its legal duty to consider all possible mitigating and aggravating factors"). But see State v. Roberts, 2013-Ohio-4580, ¶ 56, 998 N.E.2d 1100 (inferring complete failure to consider mitigating factors from trial judge's failure to mention defendant's allocution when it was "only relevant matter that was specifically placed before the trial court as mitigation").

¶ 26. We have remanded sentences for failing to consider individual factors in exceptional circumstances. Lumumba, 2014 VT 85, ¶ 25 (reversing for resentencing where sentencing court explicitly refused to consider, or even attempt to understand, interaction between internal Department of Corrections operating procedures and defendant's immigration status, resulting in what would effectively be determinate life sentence). Here, the sentencing court made no explicit refusal to consider any relevant mitigating factors. In fact, the court did mention that defendant "had just previously turned eighteen" after describing his "impulsiv[ity]" and the age of C.H. Neither are there exceptional circumstances inflating this sentence far beyond its expected reach. Thus, the trial court's failure to comment on mitigating factors such as the defendant's youth or past history as a victim of abuse does not a imply a failure to consider them or an abuse of discretion.

¶ 27. Just as we have said that "the court is not obligated to explicitly address each factor" regarding the "legitimate goals of criminal justice," neither does the simple failure to address a particular mitigating factor doom a sentence. State v. Allen, 2010 VT 47, ¶ 14, 188 Vt. 559, 1 A.3d 1003 (mem.) (quoting State v. Ingerson, 2004 VT 36, ¶ 10, 176 Vt. 428, 852 A.2d 567). While "public confidence in the integrity and fairness of our judiciary" urges "trial courts to place on the record, either orally or in writing, what enhancement or mitigating factors were considered," State v. King, 432 S.W.3d 316, 322 (Tenn. 2014) (quotation omitted), we cannot reduce the sentencing process to a purely formulaic exercise. Sentencing remarks, however insightful, can never provide a complete accounting of each factor, weight, and calculation reflected upon by a judge. Neither could a mechanical recitation of an ever-expanding checklist

of factors provide us with the desired degree of surety.  Within limits, we must rely upon the discretion and judgment of the sentencing judge, as we do here.

¶ 28.   Viewing the totality of the sentencing remarks, we are not convinced that the sentencing court improperly punished defendant for exercising his right to go to trial.  Neither do we conclude that the sentencing court ignored evidence before it regarding the efficacy of community-based treatment, or failed to consider mitigating factors when fashioning a sentence.

Affirmed.

FOR THE COURT:

_____
Associate Justice

11