1997 ME 40

**STATE of Maine**

v.

**Jeffrey McKECHNIE**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 13, 1996.
Decided March 12, 1997.

David W. Crook, District Attorney, Paul Rucha, Asst. Dist. Atty., Augusta, for State.

Andrew B. Maclean, Doyle & Nelson, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Jeffrey McKechnie appeals the judgments entered in the Superior Court (Kennebec County, *Alexander, J.*) convicting him for eluding a police officer in violation of 29 M.R.S.A. § 2501–A, operating under the influence in violation of 29 M.R.S.A. § 1312–B, aggravated furnishing or trafficking scheduled drugs in violation of 17–A M.R.S.A. § 1105, possession of a firearm by a felon in violation of 15 M.R.S.A. § 393, burglary in violation of 17–A M.R.S.A. § 401, and violation of a bail condition, 15 M.R.S.A. § 1092. Defendant contends on appeal that the Superior Court (*Crowley, J.*) erred in denying his motion to suppress the results of certain field sobriety tests as those tests were administered in violation of his rights under the Fifth Amendment and Article I, § 6 of the Maine Constitution. Finding no error, we affirm the judgment.

[¶ 2] The relevant facts as found at the suppression hearing are as follows. On the evening of August 20, 1994, Officers Toman and Guilmette of the Gardiner Police Department were positioned on Route 201 near the home of Maria Dorso. Dorso had requested that a patrol car stop by her place that evening after defendant called her from a bar where he had been drinking. Both officers involved had responded to various domestic violence and harassment calls involving the couple in the past. Shortly after the officers arrived, they spotted defendant's car approximately one mile from Dorso's residence. They pulled behind defendant and pursued him at speeds approximating ninety miles per hour in a fifty-five mile per hour zone with their lights flashing and at least one siren active until defendant screeched to a halt in Dorso's driveway.

[¶ 3] Defendant got out of his car and began to walk toward Dorso's trailer. Guilmette ordered him to stop and he did. He patted defendant down and noticed that defendant had bloodshot eyes and difficulty with his balance. At that point, Guilmette asked defendant to perform field sobriety tests. Defendant expressed no hesitation or unwillingness and consented to do so. Guilmette administered a heel-to-toe test, a finger-to-nose test, and an alphabet test. Defendant did not properly perform the heel-to-toe test. He missed his nose and swayed while performing the finger-to-nose test. While indicating that he knew the alphabet, defendant lost his place during two attempts to recite it. At that point, Guilmette placed him under arrest.

[¶ 4] At the station, defendant was read an implied consent form. He agreed to take an intoxilyzer test but failed to complete it. Guilmette testified that defendant was not actually trying to complete the test. Defendant was then read his *Miranda* rights. It was 2:30 a.m. Defendant indicated that he understood his rights and agreed to answer some questions. He stated that he had consumed two beers, the last of which was consumed at 9:30 p.m. He also stated, in response to questioning, that he was affected by what he had to drink and that he was not fit to drive.

[¶ 5] Defendant was released on bail under conditions, including that he have no contact with Dorso. The evidence at the trial revealed that defendant returned to Dorso's residence after being released on bail, broke into the trailer, and accosted Dorso. The arrival of the police caused defendant to flee. He was later rearrested.

[¶ 6] Defendant was indicted for burglary, eluding a police officer, possession of a firearm by a felon, operating under the influence, assault, and violation of a bail condition and he entered not guilty pleas to these charges. Defendant then filed a motion to suppress certain evidence including any testimony concerning the results of the field sobriety tests administered by Guilmette. The court suppressed the results of the alphabet field sobriety test but denied defendant's request to suppress the results of the heel-to-toe and finger-to-nose tests. After a jury

trial, defendant was convicted of all charged offenses, except assault, and sentenced. Defendant appeals his convictions.

[¶ 7] Defendant contends that the heel-to-toe and finger-to-nose test results obtained on the night in question were testimonial in nature and were elicited during custodial interrogation that took place before his *Miranda* warnings. Thus, he argues, the test results were obtained in violation of the Fifth Amendment, as interpreted by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in violation of the Maine Constitution. The privileges against self-incrimination contained in both the Fifth Amendment and Article I, section 6 of the Maine Constitution are intended to protect persons against the compulsion of testimonial evidence. *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966); *State v. Nason*, 433 A.2d 424, 428 (Me.1981). The *Miranda* warnings, required in the presumptively coercive environment created by custodial interrogation, are meant to serve the same purpose.[1] Thus, if evidence obtained during custodial interrogation is not testimonial, neither the *Miranda* decision nor the Maine Constitutional privilege is implicated.

[¶ 8] In *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the United States Supreme Court was called on to decide "whether various incriminating utterances of a drunk-driving suspect, made while performing a series of sobriety tests, constitute testimonial responses to custodial interrogation for purposes of the Self–Incrimination Clause of the Fifth Amendment." *Id.* at 584, 110 S.Ct. at 2641. The Court held: " '[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information.' " *Pennsylvania v. Muniz*, 496 U.S. 582, 589, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528 (1990) (quoting *Doe v.*

*United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988)). It concluded that the content of Muniz's response to the question "Do you know what the date was of your sixth birthday?" was testimonial. *Id.* at 598–600, 110 S.Ct. at 2648–50. The court distinguished the content of the response from the physical inability of the defendant to respond clearly.

> Under *Schmerber* and its progeny, we agree with the Commonwealth that any slurring of speech and other evidence of lack of muscular coordination revealed by Muniz's responses to Officer Hosterman's direct questions constitute nontestimonial components of those responses.

*Id.* at 592, 110 S.Ct. at 2645.

[¶ 9] While not deciding the issue, the Court also noted that the Pennsylvania court's refusal to suppress the results of Muniz's sobriety tests was "in accord with [the conclusions] of many other state courts, which have reasoned that standard sobriety tests measuring reflexes, dexterity, and balance do not require the performance of testimonial acts." *Id.* at 603 n. 16, 110 S.Ct. at 2651 n. 16; *see also State v. Burns*, 661 So.2d 842, 848 (Fla.Dist.Ct.App.1995) (finger-to-nose and heel-to-toe tests nontestimonial); *Commonwealth v. Hayes*, 544 Pa. 46, 674 A.2d 677 (1996) (horizontal gaze nystagmus test, walk-and-turn test, and one-leg stand test not testimonial under federal or state constitutions); *State v. Maze*, 16 Kan.App.2d 527, 825 P.2d 1169 (1992) (horizontal gaze nystagmus test, one-leg stand test, heel-to-toe test non-testimonial); *Farmer v. Commonwealth*, 10 Va.App. 175, 390 S.E.2d 775, 780 (1990) (to the extent that field sobriety tests are dexterity tests, the results of such tests constitute real evidence); *Commonwealth v. Brennan*, 386 Mass. 772, 438 N.E.2d 60, 64 (1982) (defendant's performance in finger-to-nose test, while picking up coins, and while walking a straight line not

---

1. We have never required the *Miranda* warnings as a matter of state constitutional law. *State v. Gardner*, 509 A.2d 1160, 1162–1163 (Me.1986). "Whether *Miranda* is applicable in any given situation is accordingly a matter of federal constitutional law." *Id.* The procedure created by this court to satisfy the requirements of Me. Const., art. I, § 6 is set forth in *State v. Snow*,

513 A.2d 274, 276 (Me.1986). If a defendant contends that any statements were obtained through compulsion, the State must prove, beyond a reasonable doubt, that they were voluntary. *Id.* (citing *State v. Collins*, 297 A.2d 620, 627 (Me.1972)). The Superior Court found in this case that defendant's compliance with the request for field sobriety tests was voluntary.

testimonial under state or federal constitutions).

[¶ 10] We endorse the rationale expressed in *Muniz,* and conclude that the results of the heel-to-toe and finger-to-nose tests obtained in this case are not communicative in nature. They are simply tests designed to reveal a "lack of muscular coordination" that may evidence impairment resulting from the use of alcohol. The tests do not elicit testimony. Because the Fifth Amendment only prohibits the compulsion of testimony, *Miranda* warnings need not have preceded the tests. Similarly, because the protections of the Maine Constitution only extend to testimonial evidence, the state privilege was not implicated by the administration of the two dexterity tests in question. *State v. Eastman,* 1997 ME 39, 691 A.2d 179 (1997). The Superior Court did not err in denying defendant's motion to suppress.

The entry is:

Judgments affirmed.

