STATE OF MAINE                 SUPERIOR COURT
CUMBERLAND, ss.             DOCKET NO. CR-07-2909
                            JAW - CUM - 5/20/2008

STATE OF MAINE

v.                  ORDER ON MOTION TO SUPPRESS

RICHARD NEWCOMB

## INTRODUCTION

Pending is Newcomb's motion to suppress evidence arising out of statements made by him without the *Miranda* warning when the officer first encountered him and while waiting to leave the scene at Picnic Point on Peak's Island. Newcomb is charged with two counts: assault, Class D, in violation of 17-A M.R.S.A. § 207(1)(A), and criminal threatening, Class D, in violation of 17-A M.R.S.A. § 209(1).

### Facts

On September 2, 2007, just before 1:30 a.m., Les Smith and Dan Rose, Portland Police Officers assigned to Peak's Island, were dispatch to Picnic Point for a party with a campfire. They parked their vehicle, approached Picnic Point by a foot path and discovered a group of people who had been to a wedding in the afternoon and who were paying guitars and bongo drums and some local kids had joined them. There had been some arguing or fighting but the officers determined that it had been mutual and did not make any arrests. The officers directed the island kids to put out the fire, clean up and go home. The officers returned to their vehicle to watch for underage drinking and make sure the island kids left the area. Within ten minutes, the officers were dispatched to the same area for reported fighting. The officers were advised that someone had been chased

1

into the water. As the officers approached Picnic Point, they split off onto different paths. At the fire pit, Officer Smith met seven to twelve individuals who said a bunch of island kids jumped one of them from behind and chased him into the water. They pointed to the area where this happened. Officer Smith saw a man running along the rocks, the group of people yelled, "That's the one who did this." Officer Smith took off after him, yelling at him to stop. The man stopped running and Smith caught up to him. With his flashlight, Smith recognized the male as Dickie Newcomb, a young man he knew from the island. Newcomb had cuts on his knuckles and he was very wet. Officer Smith asked him, "What happened?" Newcomb responded, "I was in a fight." Newcomb and Officer Smith walked around Picnic Point until they came back to the entrance to the point to wait for Officer Rose. Officer Smith directed Newcomb to sit down and wait. Moments later, Officer Rose and Harvath, another male, arrived from separate paths. The man pointed to Newcomb and stated, "He is the one who hit me; say something so I can hear your voice." Newcomb stood up stating, "I did not try to drown him. I tell you now, I hit him. I did not try to drown him. If anything, I saved his life, I pulled him out of the water and he even thanked me when I pulled him out of the water." The male said, "Not true, you did try to drown me, you tried to kill me." By this time, several people had gathered around within an eight-foot radius, yelling at Newcomb and stating he should go to jail. The officers tried to quiet the crowd. Officer Smith decided to get Newcomb out of there so Smith and Newcomb returned to the police vehicle to wait for Officer Rose who remained with the group of people. While walking back to the police vehicle the crowd was yelling that they wanted Newcomb to go to jail for attempted murder. Rose explained to Newcomb that he would get summonsed for simple

2

assault. Newcomb kept repeating what he had said before, he "did not try to drown him," admitting he hit him, he pulled him out of the water and Harvath thanked him when he pulled him out of the water. Other than the original question from Officer Smith when he first encountered Newcomb and asked him "what happened", neither officer asked Newcomb any questions. The officers were focused throughout in trying to find out what happened, to quell the angry people at the fire pit and to end the partying. The officers thought it best to separate the two men, Newcomb and Harvath, and get their statements at a later time.

The officers were armed and in uniforms. *Miranda* was not administered to Newcomb. The officers never placed Newcomb in handcuffs or restrained him physically. They did transport him out of the area and summonsed him for assault.

## Discussion

In support of his motion, Newcomb argues that any statements were made in violation of his *Miranda* rights and law enforcement knew or should have known that the circumstances were likely to elicit incriminating statements. Defendant relies on *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). In *Muniz*, the Unites States Supreme Court "was called on to decide 'whether various incriminating utterances of a drunk-driving suspect, made while performing a series of sobriety tests, constitute testimonial responses to custodial interrogation for purposes of the Self-Incrimination Clause of the Fifth Amendment.'" *State v. McKechnie*, 1197 ME 40, ¶ 8, 690 A. 2d 976, 978. In *Muniz*, the Supreme Court concluded that *Miranda* required the suppression of defendant's response to the question regarding the date of the defendant's sixth birthday, but did not agree that the entire audio portion of the videotape should have been suppressed. The Supreme

3

Court distinguished between the content of the response from the physical inability of the defendant to respond clearly, such as slurring of speech and other evidence of lack of coordination revealed by the defendant's response to the officer's direct questions. Thus, the Supreme Court did not deem field sobriety tests to be communicative in nature, but rather "tests designed to reveal a 'lack of muscular coordination' that may evidence impairment resulting from the use of alcohol." *McKechnie*, 1997 ME ¶ 9, 690 A. 2d at 978 (quoting *Muniz*, 496 U.S. at 592).

In the case at hand, Officer Smith asked only one question, "what happened" when he first came upon the scene and called to Newcomb to stop. There are no other direct questions by an officer. What followed is that Officer Smith asked Newcomb to accompany him to the entrance of Picnic Point where he was to meet the other officer. When they reached the meeting area, Officer Smith directed Newcomb to be seated on a rock while they awaited the return of the other police officer. The other officer arrived at the same time as Harvath, another individual – not connected to law enforcement – when Harvath yelled out a comment to Newcomb eliciting a response from Newcomb. A *Miranda* warning is required only if a defendant is in custody and subject to interrogation. See, e.g. *State v. Swett*, 1998 ME 76, ¶ 4, 709 A. 2d 729, 730. "The *Miranda* rule does not apply to spontaneous statements that are not a response to interrogation." *State v. Lear*, 1998 ME 273, 722 A. 2d 1266, citing *Muniz*, 496 U.S. 605. Without deciding whether Newcomb was in custody, the question is whether this was police interrogation. The officers did not elicit incriminating statements or admissions, nor should the officers have known that the other individual would shout something that would elicit incriminating statements or admissions. *See Rhode Island v. Innis*, 446 U.S.

4

291 (1980). Thus Newcomb was not subject to interrogation. Newcomb's responses to Harvath's statements and the spontaneous repetition of his statements as Newcomb and Officer Smith walked out of the area and away from the crowd were not the result of police interrogation.

When Officer Smith first approached Newcomb and asked "what happened" also did not constitute custodial interrogation. The line between statements obtained as part of a "general investigation" and those secured in "custodial interrogation" was not crossed. *See State v. Philbrick*, 436 A. 2d 844, 849 (Me. 1981). There was nothing improper in Officer Smith's inquiry of Newcomb – "What happened?" "Such a neutral and impersonal request for information at that initial stage qualified as a general on-the-scene questioning which police officers have a duty to carry on in their conventional investigation of criminal incidents or activities." *Id.* Officer Smith knew nothing of the circumstances about what Newcomb was doing in the area; Newcomb had not been one of the island kids at the fire pit when the officers were dispatch to Picnic Point the first time.

The entry will be:
Defendant's motion to suppress is denied.

May 19, 2008

Joyce A. Wheeler
Justice, Superior Court

5