STATE OF MAINE                              UNIFIED CRIMINAL COURT
CUMBERLAND, ss.                             PORTLAND
                                            Docket No. CDCR-20-3290

STATE OF MAINE              )
                           )
v.                         )        ORDER ON DEFENDANT'S
                           )        MOTION TO SUPPRESS
                           )
MICHAEL BRACKETT           )
      Defendant            )

A hearing was held on Defendant's Motion to Suppress on January 3, 2022. Student attorney Scott DeLong along with supervising attorney, Assistant District Attorney Grant Whelan appeared and argued on behalf of the State and Attorney Michael Bowser appeared and argued on behalf of Defendant. Defendant was present by Zoom by agreement of the parties and without objection of the Defendant. The court heard testimony from Portland Police officer John Nelson, referred to herein as Officer Nelson, and reviewed Defendant's Exhibit 1 which contained a portion of the video footage from Officer Nelson's body camera and a portion of the video footage from Officer Burnell's cruiser camera.

Attorney Bowser informed the court at the onset of the hearing that Defendant was seeking suppression of any statements made of Defendant without the benefit of Miranda[1] after he was placed in custody and suppression of the field sobriety tests evidence on the ground that the field sobriety testing was conducted without Defendant's consent.

The court finds the following facts: On or about July 11, 2020, at approximately 12:20 a.m., Officer Nelson was working a patrol beat in Portland. He was in full uniform and in a marked cruiser. At approximately 12:23 a.m. he was dispatched to the area of Allen Avenue for a vehicle that was stopped in the middle of the road. When Officer Nelson arrived at the area, he observed a vehicle stopped in the middle of the travel lane on Allen Avenue

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2nd 694 (1966)

near Bruno's Restaurant. A second officer, Officer Brunell, was also present at the scene of the vehicle when Officer Nelson arrived.[2] The stopped vehicle was in the middle of the travel lane facing northbound towards Forest Avenue.

The two officers parked and approached the vehicle on foot with Officer Brunell approaching on the driver's side of the vehicle and Officer Nelson further back on the passenger side. As the officers got close, the vehicle began pulling away, moving forward in the travel lane. The officers yelled commands to stop but the vehicle continued to pull away. Both officers returned to their vehicles and began pursuing the vehicle. Officer Brunell was behind the suspect vehicle with lights and siren on attempting a traffic stop. The suspect vehicle continued traveling on Allen Avenue, traveling through two sets of traffic lights, first proceeding from Allen Avenue onto Forest Avenue, and then at the intersection of Forest Avenue and Stevens Avenue. Throughout the vehicle maintained a moderate speed. A short distance after the second traffic light, the vehicle pulled to the right and stopped nearby to Samuels's Pub on Forest Avenue.

Because the operator initially fled the traffic stop and failed to initially stop when directed, the officers approached the stopped vehicle with their weapons drawn. Both officers instructed the operator to put his hands out the driver's side window, which the operator did. Officer Brunell approached the driver's side and after looking into the vehicle, holstered his weapon. Officer Nelson, who approached on the passenger side also had his weapon drawn. Officer Nelson observed an open can of beer in the center console. After inspecting the interior of the vehicle through the window, Officer Nelson also holstered his weapon and walked around to the driver's side where the operator was exiting the vehicle. The operator, who was later identified as Defendant, was unsteady on his feet as he got out of the vehicle. Officer Nelson instructed Defendant to "come over here" whereupon he placed Defendant in handcuffs.

---

[2] Dispatch was called by a motorist who was stopped nearby. There was also a tow truck present attending to another vehicle, unrelated to the vehicle stopped in the travel lane of Allen Avenue.

At this point Officer Nelson instructed Defendant that he was "detained at the moment, because you're not listening to instructions." Officer Nelson proceeded to ask Defendant: "what was going on tonight, why were you stopped in the middle of the road back there, and not stopping for us when we have out blue lights and sirens on?" and "Is there any reason you're not stopping for police?" Officer Nelson also asked how much Defendant had had to drink that night. Defendant slurred his words and answered in almost unintelligible answers. Officer Nelson then informed Defendant he wanted him to do some field sobriety tests. At this point Officer Nelson removed the handcuffs.[3]

During this brief interaction with Defendant, Officer Nelson observed Defendant to be lethargic, unsteady and swaying as he stepped out of the vehicle. Once out of the vehicle, Officer Nelson noted a strong odor of alcohol coming from Defendant. When speaking with him, Defendant slurred his words to the point that some of his words were unintelligible. Officer Nelson further described that Defendant's slurring of words was some of the worse slurs he had seen in his career.

The first question before the court is whether or not Defendant in custody when he was removed from the vehicle and placed in handcuffs. The burden is on the State to prove that Defendant was not in custody by a preponderance of the evidence. *State v Prescott*, 2012 ME 96, ¶10, 48 A.3d 218. In analyzing whether a person is in custody prior to a formal arrest, the court must consider "whether a reasonable person standing in the shoes of [the Defendant] would have felt he or she was not at liberty to terminate the interrogation and leave or if there was a restraint on [Defendant's] freedom of movement of the degree associated with a formal arrest." *State v King*, 2016

---

[3] Defendant's Exhibit 1, which was jointly offered by the parties and admitted by the court, is a flash drive containing two video clips, one from Officer Brunell's cruiser cam video and the other from Officer Nelson's body cam video. Each video is a portion of the entire video with the clip from Officer Brunell's video lasting 2 minutes and 30 seconds and the clip from Officer Nelson's video lasting 4 minutes and 20 seconds. Due to the abbreviated video, the court's analysis ends prior to the commencement of the field sobriety tests, as the handcuffs are being removed.

3

ME 54 at ¶17 (quotation marks omitted). In making this determination regarding custody, the Law Court has identified a non-exhaustive list of objective characteristics of an interrogation to be considered by the court:

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*Id.. quoting State v. Dion*, 2007 ME 87, ¶23, 928 A.2d 746. "Because the custody test is purely objective, the subjective intent or beliefs of either the police or the suspect play no role in the legal determination except to the extent that they manifest themselves outwardly and would affect whether a reasonable person would feel constrained to a degree commensurate with police custody." *State v Prescott*, 2012 ME 96 at ¶11 (quotations omitted).

In the instant case, Defendant was stopped on Forest Avenue after being signaled to stop by two law enforcement officers in cruisers with lights and at least one with siren going. The officers, who were in uniform, ordered Defendant out of his vehicle with their guns drawn, and immediately upon

4

exiting his vehicle, the officers briefly patted him down and placed Defendant in handcuffs, whereupon the officer stated to Defendant that he was "detained at the moment, because you're not listening to instructions." No *Miranda* warning was given, but the officer immediately asked Defendant why he was stopped in the middle of the road, why he had not stopped for the officers with blue lights and sirens on, and how much he had had to drink that night? These factors, taken in the totality of the circumstances, describes "a restraint on freedom of movement of the degree associated with a formal arrest." *Id.*, at ¶14. The court finds that at the point he was removed from the vehicle he was in custody, and not subject to merely an investigatory detention, and he had not been advised of or waived his rights *Miranda* rights. The court grants Defendant's motion to suppress with respect to the answers to Officer Nelson's questions once in handcuffs.

The second question for the court, whether or not suppression of the field sobriety tests is warranted on the ground that the field sobriety testing was conducted without Defendant's consent and without a waiver of *Miranda*. Maine courts have long held that field sobriety test results are generally considered to be physical or non-testimonial evidence. *State v Eastman*, 1997 ME 39, ¶10., 691 A.2d 179. (*See also State v. Millay*, 2001 ME 177, ¶15, 787 A.2d 19, where court held a defendant's performance on field sobriety tests is nontestimonial in nature; *State v. Bragg* 2012 ME 102, ¶13.) Similarly, observations of Defendant's slurred speech is not testimonial. If evidence obtained during a custodial interrogation is not testimonial, neither *Miranda* nor the Maine Constitutional privilege is implicated. *State v. McKechnie*, 1997 ME 40, ¶7, 690 A.2d 976.

The court finds that, based on the totality of the circumstances, Officer Nelson had the requisite reasonable articulable suspicion to conduct the field sobriety testing, given his observations of Defendant's erratic driving, his unsteadiness when exiting the vehicle and his slurred speech. *See, e.g., State v. King*, 2009 ME 14, ¶ 6, 965 A.2d 52, 54 ("An officer may undertake field sobriety testing, like any other investigatory stop, if at the time the officer has

an articulable suspicion, objectively reasonable in light of all the circumstances, that the object of the search has committed or is about to commit a crime"); *State v. Webster*, 2000 ME 115, ¶ 7, 754 A.2d 976, 978 ("For there to be probable cause to arrest someone for operating under the influence ... an officer "must have probable cause to believe that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink").

Finally, Defendant's argument that he did not consent to the field sobriety tests is not persuasive. At no time did Defendant object to performing the field sobriety tests. Officer Nelson had articulable suspicion, objectively reasonable in light of all the circumstances, sufficient to request Defendant to perform field sobriety tests.

It is accordingly hereby ORDERED that Defendant's Motion to Suppress is GRANTED in part and DENIED in part. Statements made by Defendant after he was removed from the vehicle and placed in handcuffs are SUPPRESSED. The Motion to Suppress as it relates to Officer Nelson's observations of Defendant, including his performance on field sobriety tests, is DENIED.

DATED: February 1, 2022

Deborah P. Cashman, Justice
Maine Unified Criminal Court

6